# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### MISCELLANEOUS ACTION NO. 17-38

| | | |
|---|---|---|
| IN RE: BARRY PORTNOY | : | (Bankruptcy No. 14-16081) |
| | : | |
| ROBERT H. HOLBER<br>*As Chapter 7 Trustee of the Estate of*<br>*Barry Portnoy,*<br>    *Plaintiff,* | : | (Adversary Proceeding No. 16-248) |
| v. | : | |
| BARRY PORTNOY et al.,<br>    *Defendants.* | : | |
| REPUBLIC FIRST BANK d/b/a<br>REPUBLIC BANK<br>    *Plaintiff,* | : | (Adversary Proceeding No. 16-409) |
| v. | : | |
| ALTCHEM ENVIRONMENTAL<br>SERVICES, INC. et al.,<br>    *Defendants.* | : | |
| REPUBLIC FIRST BANK d/b/a<br>REPUBLIC BANK<br>    *Plaintiff,* | : | (Adversary Proceeding No. 15-37) |
| v. | : | |
| BARRY PORTNOY,<br>    *Defendant.* | : | |

1

PRATTER, J.                                                                                              JULY 24, 2017

## MEMORANDUM

Danielle Portnoy; Samantha Portnoy; Zachary Portnoy; Altchem Environmental Services, Inc.; Samzach Partners, L.P.; Sam-Zachary Partners, LLC; BF Services, L.P.; Maxis Construction Group;[1] Danielle Portnoy as co-trustee of the Revocable Deed of Trust of Danielle M. Portnoy; Danielle Portnoy as custodian for Zachary Portnoy and Samantha Portnoy; and Danielle Portnoy as Trustee of the SamZach Irrevocable Trust ("Movants")[2] move for withdrawal of the above-captioned consolidated adversary proceeding reference, Adv. Pro. No. 16-248, pursuant to 28 U.S.C. § 157(d) and Local Bankruptcy Rule 5011-1. The Court will deny Movants' Motion without prejudice because Movants have not met their burden to show cause why this Court should withdraw the consolidated adversary proceeding at this stage of the litigation.

### I. FACTUAL AND PROCEDURAL HISTORY

The consolidated adversary proceeding at issue consists of three adversary proceedings filed in, or removed to, the United States Bankruptcy Court for the Eastern District of Pennsylvania in connection with Debtor Barry Portnoy's July 30, 2014 Chapter 7 bankruptcy petition. The three proceedings are each premised on a similar set of facts.

Republic First Bank ("Republic Bank") and Robert Holber, Chapter 7 Trustee of the Estate of Barry Portnoy (the "Trustee," and together with Republic Bank, "Plaintiffs") allege that

---

[1] Maxis Construction Group was sued under the name Maxsys, Inc.

[2] Movants are twelve of the thirteen named defendants in the above-captioned consolidated adversary proceeding. The debtor in the underlying bankruptcy case, Barry Portnoy, is also a named defendant in the consolidated adversary proceeding, but has not joined the pending Motion.

2

Mr. Portnoy fraudulently transferred real estate and other assets, facilitated sham mortgages, took deliberate actions to cloud title to his assets, and used companies he controlled to hide personal assets so that he could appear, on paper, to be insolvent. Plaintiffs allege Mr. Portnoy took these actions in order to avoid repaying over $2 million of loans extended to him (or companies controlled by him) by Republic Bank on which he had defaulted. The allegations concern alleged pre-petition conduct.

The first adversary proceeding involves two state court complaints ("Republic Bank's First Proceeding"). Republic Bank first filed suit on October 30, 2014 against Danielle Portnoy; Samantha Portnoy; Zachary Portnoy; Danielle Portnoy as co-trustee of the Revocable Deed of Trust of Danielle M. Portnoy; Danielle Portnoy as custodian for Zachary Portnoy and Samantha Portnoy; Danielle Portnoy as Trustee of the SamZach Irrevocable Trust; Altchem Environmental Services, Inc.; Samzach Partners, L.P.; Sam-Zachary Partners, LLC; BF Services, L.P.; and Maxis, Inc. alleging: (i) fraudulent transfer, (ii) unjust enrichment, (iii) civil conspiracy, and (iv) equitable relief to impose a constructive trust and attach assets. Republic Bank next filed suit on August 18, 2015 against Maxis Construction Group, Inc. alleging: (i) fraudulent transfer, (ii) unjust enrichment, and (iii) equitable relief to impose a constructive trust and attach assets. The Defendants' answers to both state court complaints included jury trial demands. On November 16, 2016, Plaintiffs removed the Bank's First Proceeding to bankruptcy court. *See Republic First Bank d/b/a Republic Bank v. Altchem Environmental Servs., Inc.*, Adv. Pro. No. 16-409.

The second adversary proceeding involves Republic Bank's adversary complaint filed in bankruptcy court on January 30, 2015 against Mr. Portnoy containing four denial of discharge claims pursuant to 11 U.S.C. § 727(a)(2)-(5) ("Republic Bank's Second Proceeding"). *See*

3

*Republic First Bank d/b/a Republic Bank v. Portnoy*, Adv. Pro. No. 15-37. There is a pending motion for summary judgment in Republic Bank's Second Proceeding.

The third adversary proceeding involves the Trustee's adversary complaint filed in bankruptcy court on July 29, 2016 against Movants, Mr. Portnoy, Frederick Robinson, and Linda Robinson alleging: (i) fraudulent transfer pursuant to the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. C.S. § 5104, (ii) fraudulent transfer pursuant to PUFTA, Pa. C.S. § 5105, (iii) avoidance of fraudulent conveyances pursuant to 11 U.S.C. § 548(A)(1)(A), (iv) avoidance of fraudulent conveyances pursuant to 11 U.S.C. § 548(A)(1)(B), (v) recovery of avoided transfers pursuant to 11 U.S.C § 550, (vi) disallowance of all claims pursuant to 11 U.S.C § 502(D), (J), (vii) turnover of property of estate pursuant to 11 U.S.C § 542, (viii) unjust enrichment, and (ix) conspiracy ("Trustee's Proceeding"). *See Holber v. Portnoy*, Adv. Pro. No. 16-248. While Movants did not assert their right to a jury trial when answering the Trustee's adversary complaint, the bankruptcy court entered a stipulation in January 2017 by which the court deemed Movants (and Mr. Portnoy) to have requested a jury trial.

The bankruptcy court consolidated these three adversary proceedings into Adv. Pro. No. 16-248 on December 20, 2016. Movants moved on March 27, 2017 for withdrawal of the thus consolidated adversary proceeding reference to this Court.

## II. LEGAL STANDARDS

Section 157(d) of 28 U.S.C. authorizes district courts to "withdraw, in whole or in part, any case or proceeding referred under this section [to the Bankruptcy Court], on its own motion or on timely motion . . . for cause shown." 28 U.S.C. § 157(d). Withdrawal of a reference is at the discretion of the district court unless "resolution of the proceeding requires consideration of

4

both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," in which case withdrawal is mandatory. 28 U.S.C. § 157(d); *Nw. Inst. of Psychiatry, Inc. v. Travelers Indem. Co.*, 272 B.R. 104, 107 (E.D. Pa. 2001).

A court's exercise of discretion to withdraw is guided by whether (i) the underlying proceeding involves "core" or "non-core" claims, and (ii) any party has asserted a right to a jury trial to which it is constitutionally entitled. *Shubert v. Law Offices of Paul J. Winterhalter*, 531 B.R. 546, 550 (E.D. Pa. 2015); *Feldman v. ABN AMRO Mortg. Grp. Inc.*, 515 B.R. 443, 446 (E.D. Pa. 2014).

The Third Circuit Court of Appeal has also identified five factors for courts to consider when determining whether cause exists to withdraw a reference: (i) the promotion of uniformity in bankruptcy administration, (ii) the reduction of forum shopping and confusion, (iii) the economical use of the parties' resources, (iv) expediting the bankruptcy process, and (v) the timing of the motion for withdrawal. *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). The party seeking to withdraw the reference bears the burden to show cause. *Feldman*, 515 B.R. at 452.

### III. DISCUSSION

Movants seek a discretionary withdrawal of the consolidated adversary proceeding reference. Movants primarily argue that the Court should withdraw the reference because they are constitutionally entitled to a jury trial on certain claims asserted against them in the consolidated adversary proceeding. Plaintiffs argue that Movants have not met their burden to establish cause for withdrawal pursuant to § 157(d). All parties argue in the alternative that this

5

Court should deny Movants' Motion without prejudice, with leave to re-file when this case becomes ready for trial.

### A. "Core" vs. "Non-Core" Proceeding

A proceeding is "core" if it invokes a substantive right provided by the Bankruptcy Code or if the claim could arise only in the context of a bankruptcy case. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (citing *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996)). Section 157(b)(2) provides a non-exhaustive list of core proceedings. 28 U.S.C. § 157(b)(2). "Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." *Halper*, 164 F.3d at 837. Section 157(b)(1) authorizes bankruptcy courts to enter final orders and judgments in core proceedings. While bankruptcy courts are authorized to oversee non-core proceedings, the bankruptcy court cannot enter final orders or judgments in non-core proceedings. Rather, the bankruptcy court must (absent consent of the parties) submit proposed findings of fact and conclusions of law to the district court to review *de novo*. 28 U.S.C. § 157(c); *Shubert*, 531 B.R. at 550.[3] This dichotomy in the bankruptcy court's statutory authority often makes a non-core proceeding a better candidate for a motion for withdrawal because it alleviates the need for a *de novo* review by the district court. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *Valley Forge Plaza Assocs. v. Fireman's Fund Ins. Cos.*, 107 B.R. 514, 516 (E.D. Pa. 1989).

---

[3] Some claims statutorily defined as "core" pursuant to 28 U.S.C. § 157(b)(2) may not, as a constitutional matter, be finally adjudicated by the bankruptcy court. *Executive Benefits Ins. Agency v. Arkison (In re Bellingham)*, 134 S. Ct. 2165, 2172 (2014); *Stern v. Marshall*, 564 U.S. 462, 482, 499 (2011). The Supreme Court has instructed that such claims, colloquially referred to as *Stern* claims, should proceed pursuant to 28 U.S.C. § 157(c) as if they were non-core claims. *In re Bellingham*, 134 S. Ct. at 2173. Accordingly, when faced with a *Stern* claim, a bankruptcy court must (absent consent of the parties) submit proposed findings of fact and conclusions of law to the district court to review *de novo*. *Id.*

6

The district court, however, retains its discretion to withdraw or not to withdraw a reference regardless of a proceeding's characterization as core or non-core. *Valley Forge*, 107 B.R. at 516 n.4; *Katzev v. Dunavant*, No. 97-3941, 1997 WL 786461, at *5 (E.D. Pa. Nov. 20, 1997).

The parties here basically fail to address whether the claims at issue in the consolidated adversary proceeding are core or non-core.[4] Fortunately for them, the Court does not need to make a final determination on the nature of the claims at issue to resolve this Motion because the characterization of the claims as core or non-core is not a dispositive factor in the withdrawal analysis. For purposes of this Motion the Court will assume, without deciding on a claim-by-claim basis, that the consolidated adversary proceeding involves a mixture of core, non-core, and *Stern* claims. *See, e.g.*, 28 U.S.C. § 157(b)(2)(J) (listing "objections to discharges" as core proceedings); *In re Bellingham*, 134 S. Ct. at 2174 (assuming without deciding that fraudulent conveyance claims are *Stern* claims); *In re Pa. Gear Corp.*, Adv. Nos. 03-940, 03-942, 2008 WL 2370169, at *5 (Bankr. E.D. Pa. Apr. 22, 2008) (describing unjust enrichment as a "clear non-core" proceeding).

The mixed nature of the consolidated adversary proceeding does not weigh in favor of withdrawing the reference at this stage of the litigation. The Court finds that judicial efficiency and economy are best served by allowing all claims to proceed together before the bankruptcy court for pretrial and discovery purposes. *Cf. In re: Rite Way Elec., Inc.*, Misc. Nos. 14-231, 14-232, 2017 WL 660856, at *6 n.27 (E.D. Pa. Feb. 17, 2017) ("Assuming some claims are 'core' and others 'non-core'—as the defendants imply—there is no prejudice to the defendants in

---

[4] The only mention in the five briefs that the parties have filed in this action on the core/non-core distinction is in footnote 9 of Republic Bank's brief in opposition. *See* Republic Bank Br. in Opp. at 4 n.9 (Doc. No. 4) ("The majority of claims asserted against Defendants are within the Bankruptcy Court's 'core' jurisdiction.").

7

delaying [ruling on the characterization of the claims]. The claims would proceed together during pre-trial because they appear to be 'intertwined.'"). The bankruptcy court is authorized to enter final judgment on all (non-*Stern*) core claims and can address any dispositive motions on *Stern*/non-core claims through a report and recommendation that this Court would review *de novo*.

### B. Right to a Jury Trial

When a party has a Seventh Amendment right to a jury trial with respect to a given claim, the bankruptcy court can only conduct the trial "with the express consent of all the parties." 28 U.S.C. § 157(e). Here, Movants argue for withdrawal of the entire consolidated adversary proceeding reference because they have asserted their right to a jury trial and the parties have not consented to a jury trial before the bankruptcy court.

Despite the fact that Movants' primary argument in favor of withdrawal is their right to a jury trial, Movants' briefs address only their Seventh Amendment right to a jury trial with regard to the fraudulent conveyance claims pursuant to *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). They do not address whether or not Movants are entitled to a jury trial on the remainder of claims asserted against them in the consolidated adversary proceeding. The Plaintiffs, while arguing that Movants do not have a constitutional right to a jury trial on certain of the equitable claims at issue (an argument Movants have not disputed), make no compelling argument against Movants' entitlement to a jury trial on the fraudulent conveyance claims.[5] The Court will

---

[5] The Trustee appears to concede that Movants have a right to a jury trial on the fraudulent conveyance claims but argues that Movants have waived that right by actively litigating disputes that have arisen in the consolidated adversary proceeding in bankruptcy court. The Trustee does not provide any case law to support its position and, given the uncontested fact that Movants have not filed any proofs of claim in the underlying bankruptcy, the Court is skeptical of the

8

assume for purposes of this Motion that Movants have a constitutional right to a jury trial on some, but not all, of the claims at issue.[6] *See, e.g.*, *Granfinanciera*, 492 U.S. at 41 (setting out framework to determine when a claim is subject to the Seventh Amendment right to a jury trial and explaining that a right to a jury trial attaches to legal claims, not equitable claims); *Shubert*, 531 B.R. at 552 ("Common law claims for money damages, such as those brought by Plaintiffs, are paradigmatic examples of legal claims."); *In re Dizinno*, 532 B.R. 231, 240 (Bankr. M.D. Pa. 2015) ("[I]n an action to deny or revoke a debtor's discharge, neither party has the right to a jury trial because a complaint under § 727 is equitable in nature.").

A party's constitutional right to a jury trial, however, is not the determinative factor in the withdrawal analysis. It is just one factor to consider. *See, e.g.*, *Nw. Inst. of Psychiatry*, 272 B.R. at 111 (considering a movant's constitutional right to a jury trial as one factor in the analysis and then moving onto consideration of the *Pruitt* factors). District courts within the Third Circuit have consistently explained that "[a]ssertion of a Seventh Amendment right to a jury trial,

---

Trustee's argument that Movants have provided the express consent to the bankruptcy court's jurisdiction that is required by 28 U.S.C. § 157. *See, e.g.*, *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (explaining that when no proof of claim has been filed, "the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial."); *In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 266-67 (S.D.N.Y. 2012) (rejecting argument that participating in hearings before the bankruptcy court without objecting to the bankruptcy court's jurisdiction amounted to consent to the bankruptcy court's jurisdiction within the meaning of 28 U.S.C. § 157).

[6]   Given the constitutional implications of this issue, the Court declines to make a final determination at this stage with regard to Movants' right to a jury trial in connection with each of the claims at issue in the consolidated adversary proceeding. *Accord Rite Way*, 2017 WL 660856, at *7 (finding it "imprudent" to make a final determination on a party's constitutional right to a jury trial "without full briefing on the relevant legal questions"). If Movants re-file their motion prior to trial, the Court urges the parties to address the relevant legal framework set out by *Granfinanciera* with regard to Movants' right to a jury trial on each claim then extant.

9

coupled with a refusal to consent to such trial before the Bankruptcy Court, is not of itself sufficient cause for discretionary withdrawal." *Pa. Academy of Music v. Regitz*, No. 10-172, 2010 WL 4909952, at *2 (E.D. Pa. Nov. 30, 2010) (citing *Williams v. Avnet, Inc. (In re Techs. Liquidations Co.)*, No. 07-177, 2007 WL 1152518, at *1 (W.D. Pa. Apr. 17, 2007)); *see also In re Nortel Networks, Inc.*, 539 B.R. 704, 710 (D. Del. 2015) ("The fact that [movant] has requested a jury trial, however, does not necessarily mandate withdrawal. This Court has explained that even for non-core claims for which a jury trial is requested, a bankruptcy court is capable of functioning in a role similar to that of a magistrate by handling pre-trial issues."); *In re Carpenter*, No. 12-21, 2012 WL 5990222, at *3 (W.D. Pa. Nov. 30, 2012) ("However, the possibility that a jury trial might be held in the future does not require that the reference be immediately withdrawn. A district court may deny a motion to withdraw until the case is 'trial ready.'" (citation omitted)).

Courts routinely permit the bankruptcy court to oversee pretrial matters, even in proceedings involving non-core claims to which a party has a jury trial right. *See Feldman*, 515 B.R. at 453 (explaining that because the Supreme Court's opinion in *In re Bellingham* made clear that the bankruptcy court can preside over pretrial matters, "the prospect of a jury trial at some later date [does not mandate] immediate withdrawal"); *Pa. Academy*, 2010 WL 4909952, at *2 ("Courts have recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial." (citation omitted)); *In re Nw. Inst. of Psychiatry, Inc.*, 268 B.R. 79, 84 (Bankr. E.D. Pa. 2001) ("[I]t is not uncommon for district courts to defer withdrawal of the reference to allow the bankruptcy court to handle a

10

proceeding until such time as the district court determines that the bankruptcy court may not do so. Many district courts have held that withdrawal of the reference on the ground that a party is entitled to a jury trial should be deferred until the case is trial ready." (quotation marks and citation omitted)).

Accordingly, the Court will consider whether Movants have met their burden to demonstrate cause for withdrawal pursuant to the *Pruitt* factor analysis.

### C.  *Pruitt* Factors

The first factor, whether withdrawing the reference would promote uniformity in bankruptcy administration, weighs against withdrawal. Where the bankruptcy court has overseen the underlying bankruptcy case for years and has already made rulings and presided over hearings with regard to the reference sought to be withdrawn, uniformity in bankruptcy administration is most advanced by the reference remaining in bankruptcy court. *See Rite Way*, 2017 WL 660856, at *5 (finding that the first *Pruitt* factor weighed against withdrawal where the bankruptcy court oversaw the bankruptcy estate for years and presided over the adversary proceeding for months); *In re AgFeed USA, LLC*, 565 B.R. 556, 564 (D. Del. 2016) (explaining that consistent findings and rulings across bankruptcy case and related adversary proceedings promotes uniformity in bankruptcy administration). Here, the bankruptcy court has overseen the underlying bankruptcy proceeding for nearly three years and has presided over the adversary proceedings at issue since their commencement in, or removal to, bankruptcy court. There is no question that the bankruptcy court, through its years-long involvement with this bankruptcy, has become intimately familiar with the facts, parties, and issues involved in the consolidated adversary proceeding. This familiarity puts the bankruptcy court in the better position to ensure

11

uniformity across the bankruptcy case and the consolidated adversary proceeding. Accordingly, the Court finds that keeping the consolidated adversary proceeding in bankruptcy court better promotes uniformity in bankruptcy administration.

The second factor, whether withdrawing the reference would reduce forum shopping and confusion, also weighs against withdrawal. While the Court will not presume that Movants' Motion is an attempt to improperly "forum shop," the Court remains concerned that withdrawal at this juncture could encourage forum shopping in the future. Two facts in particular underscore the Court's concern. First, the parties have been actively litigating aspects of these adversary proceedings for over a year. There is a concern that permitting withdrawal after the bankruptcy court has already ruled on a number of disputes would encourage a party to seek withdrawal only after receiving unfavorable rulings. *See, e.g., Feldman*, 515 B.R. at 452 (explaining that seeking withdrawal of a reference after litigating in bankruptcy court and receiving unfavorable rulings weighs against withdrawal). Second, the consolidated adversary proceeding involves certain claims that are undisputedly part of the bankruptcy court's core jurisdiction. Withdrawing the entire consolidated adversary reference could be construed as the Court allowing Movants—all insiders to Debtor Portnoy—to assist Debtor Portnoy in avoiding the bankruptcy court's review of those claims. Accordingly, the Court finds that keeping the consolidated adversary proceeding in bankruptcy court is the course of action that will discourage forum shopping in the future.

The third factor, whether withdrawing the reference would allow for the most economical use of the parties' resources, too weighs against withdrawal. The parties have already expended a significant amount of time and resources in bankruptcy court, both in connection with the

12

underlying bankruptcy and the consolidated adversary proceeding. Withdrawing the consolidated adversary proceeding reference would require the parties to devote even more time and money to bring this Court up to speed on the myriad issues relevant to the consolidated adversary proceeding, issues with which the bankruptcy court is already familiar. Accordingly, the Court finds that keeping the consolidated adversary proceeding in bankruptcy court allows for the most economical use of the parties' resources. *See Rite Way*, 2017 WL 660856, at *5 (explaining that it is most economical for the bankruptcy court to oversee proceedings where the bankruptcy court is "more familiar with the facts of the[] proceedings and the relevant law"); *AgFeed USA*, 565 B.R. at 565 (finding that "the Bankruptcy Court's familiarity with the underlying facts and issues" weighed against withdrawal because "[d]uplicating those efforts at an early stage of the case may result in unnecessary expenses for the parties, particularly given that dispositive motions and settlement may resolve the proceeding in advance of trial").

The fourth factor, whether withdrawing the reference would expedite the bankruptcy process, likewise weighs against withdrawal. If the Court were to withdraw the entire consolidated adversary proceeding reference, the underlying bankruptcy case could well be delayed until this Court had the opportunity to oversee the consolidated adversary proceeding to its eventual resolution. Even if this Court must withdraw the reference to conduct an eventual jury trial, having the bankruptcy court preside over all pretrial proceedings will allow the bankruptcy process to move forward most expeditiously. Accordingly, the Court finds that keeping the consolidated adversary proceeding in bankruptcy court will expedite the bankruptcy process.

The fifth factor, whether the moving party made a timely motion for withdrawal of the reference, weighs against withdrawal. "A § 157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding." *In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995). Here, the first opportunity to file a motion for withdrawal was in July 2016 when the Trustee initiated an adversary proceeding containing fraudulent transfer claims, the precise claims Movants now argue entitle them to a jury trial and withdrawal of the reference.[7] *See Feldman*, 515 B.R. at 453 (finding that *Granfinanciera* put movant on notice of the right to a jury trial on a fraudulent transfer claim and that litigating such claims in bankruptcy court "without making a jury demand or moving to withdraw" weighed against withdrawal). The underlying dockets in the consolidated adversary proceeding make clear that Movants litigated disputes related to these proceedings prior to seeking withdrawal of the reference. Accordingly, the Court finds that Movants' delay in seeking withdrawal militates against granting their motion at this time. *See Shubert*, 531 B.R. at 554 ("[T]he timing of Defendants' request, following several months of litigation in the adversary proceeding and the receipt of an adverse ruling from the Bankruptcy Court, also cuts against withdrawal of reference.").

\*    \*    \*

After consideration of all the pertinent factors, the Court determines that Movants failed to meet their burden to show cause for withdrawal at this juncture. Furthermore, the Court finds

---

[7] Movants did not assert their right to a jury trial when answering the Trustee's adversary complaint. Rather, nearly six months after the Trustee initiated the adversary proceeding, the bankruptcy court entered a stipulation deeming Movants (and Mr. Portnoy) to have requested a jury trial. *See Holber v. Portnoy*, Adv. Proc. No. 16-248 (Bankr. E.D. Pa. Jan. 18, 2017), Doc. No. 57. The fact that Movants belatedly perfected their right to a jury trial does not make their present Motion any more timely.

permitting this action to proceed in bankruptcy court for all pretrial purposes is in the interests of judicial efficiency and economy and will promote the most efficient use of the parties' resources. The bankruptcy court will have the opportunity to resolve motions for summary judgment covering claims on which the bankruptcy court is constitutionally authorized to enter final judgment. On all other claims, the bankruptcy court can proceed through a report and recommendation to this Court for *de novo* review. If, and when, this case appears ready for trial, Movants can re-file their motion for withdrawal of the consolidated adversary proceeding reference. At that time, if Movants are constitutionally entitled to a jury trial on any remaining claims, the Court will consider withdrawing the entire consolidated adversary proceeding for a single trial before this Court.

### IV. CONCLUSION

For the forgoing reasons, the Court will deny Movants' Motion for Withdrawal of Reference of Consolidated Adversary Proceeding.

\* \* \*

An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge